# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

GREGORY CHRISTOPHER FLEENOR,   )
                                  )
        Petitioner,           )
                                  )        No.:   2:22-CV-13-TRM-CRW
v.                            )
                                  )
JOHNNY FITZ,              )
                                  )
        Respondent.        )

## MEMORANDUM OPINION

Gregory Christopher Fleenor is seeking to challenge his 2002 Sullivan County, Tennessee, judgments of conviction for first-degree felony murder and especially aggravated robbery in this federal habeas petition brought pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondent has moved to dismiss the petition as time-barred (Doc. 20). Petitioner has not responded to the motion, and the deadline to do so has passed. *See* E.D. Tenn. L.R. 7.1. For the reasons set forth below, Respondent's motion will be **GRANTED**, and the instant petition will be dismissed with prejudice.

## I. RELEVANT FACTUAL AND PROCEDURAL HISTORY

On March 14, 2002, Petitioner pleaded guilty to first-degree felony murder and especially aggravated robbery in the Criminal Court for Sullivan County, Tennessee, and was sentenced to incarceration in the Tennessee Department of Correction for a lifetime term plus fifteen years. (Doc. 1, at 1.)

At Petitioner's guilty-plea hearing, the State summarized the evidence serving as the factual basis for Petitioner's plea. (Doc. 15-3, at 37-47.) That evidence showed that on August 20, 2001, Petitioner, and codefendants Ashley Cooper, Steve Rollins, and Angie Salyers were

arrested in Scott County, Virginia, on a charge of burglary and housed in the county jail. (*Id*. at 39.) Petitioner arranged bond for the group, and as a result, Rollins and Salyers, Rollins's girlfriend, ended up owing Petitioner several hundred dollars. (*Id.*) Rollins indicated that he would pay Petitioner back by getting money "off of" an old man with lots of money. (*Id*. at 39-40.)

The following evening, the group used cocaine together at the residence of Petitioner's father. (*Id*. at 40.) Rollins brought up the idea of going to the bait shop where he would get the money he owed Petitioner from the old man he mentioned the day prior. (*Id*.) Petitioner decided to go with Rollins. (*Id*.) The two couples rode in separate vehicles to a VFW parking lot near the victim's store and then got into one vehicle. (*Id*.) The group drove by the bait shop and then stopped at a convenience store where Petitioner funded Rollins' purchase of cloth gloves for each person in the car. (*Id*. at 41.)

Petitioner asked Rollins what he would do "if the old man pulled a gun on him," and Rollins stated "he'd cut him and do what he had to do." (*Id*. at 41.) Around midnight, the group arrived at the bait shop, and Rollins and Salyers exited the vehicle and went to a trailer parked beside the bait shop. (*Id*.) Petitioner heard them knock on the trailer door and then saw Rollins, Salyers, and the victim walking toward the bait shop. (*Id*.) Petitioner, who was still in the vehicle, "heard a lot of ruckus" in the bait shop and what sounded like the victim pleading for his life. (*Id*. at 41–42.)

Rollins and Salyer exited the bait shop, and Rollins called Petitioner to the victim's trailer. (*Id*. at 42.) Petitioner entered the trailer with Rollins and put on his gloves at Rollins' direction. (*Id*. at 42–43.) Rollins handed Petitioner a cardboard box with some items in it, and Petitioner walked to the vehicle and handed the box to Cooper. (*Id*. at 43.) The group then drove back to the VFW, retrieved the other car, and Petitioner and Cooper drove to the home of Petitioner's father, where Rollins revealed that he had taken over $1,000 and a pistol in the robbery. (*Id*.)

2

Rollins stated that he had stabbed the victim and cut the victim's throat, and that the victim had died. (*Id*. at 43–44.) According to Petitioner, Rollins threated to kill anyone who "snitched on him." (*Id*. at 44.) The foursome disposed of the clothing they had been wearing at the time the victim was murdered and used the money from the robbery to purchase more drugs. (*Id*. at 44–45.)

On July 8, 2002, Petitioner filed a pro se petition for post-conviction relief. (Doc. 15-1, at 3–7, 13.) The post-conviction court denied relief. (*Id*. at 31–43.) Petitioner appealed to the Tennessee Court of Criminal Appeals ("TCCA"), which affirmed the decision of the post-conviction court. *Fleenor v. State*, No. E2004-00943-CCA-R3PC, 2005 WL 1412104, at *4–7 (Tenn. Crim. App. June 16, 2005), *perm. app. denied* (Tenn. Oct. 31, 2005). On October 31, 2005, the Tennessee Supreme Court denied Petitioner's application for permission to appeal. (Doc. 15-10.)

In September 2015, Petitioner, assisted by counsel, filed a petition for writ of error coram nobis. (Doc. 15-11, at 9.) In the petition, Petitioner alleged that newly discovered evidence (in the form of an affidavit by Rollins and statement by Salyers denying Petitioner's active participation in the crime) proved his innocence. (Doc. 15-11, at 9; Doc. 15-13, at 65.) The trial court ultimately dismissed the petition, as a then-recent Tennessee Supreme Court decision established that coram nobis relief is not available for a conviction resulting from a guilty plea. (Doc. 15-13, at 66 (citing *Frazier v. State*, 495 S.W.3d 246, 247 (Tenn. 2016).) Petitioner attempted to appeal that decision, but the appeal was dismissed as untimely. (Doc. 15-16.)

On or about December 28, 2021, Petitioner filed his petition for writ of habeas corpus under § 2254. (Doc. 1, at 17.) The Court directed Respondent to respond to the petition, and Respondent did so by filing the State court record (Doc. 15) and a motion to dismiss the petition as untimely

(Doc. 20).  Petitioner failed to respond to the motion to dismiss, and the deadline to do so has passed.

## II.     STATUTE OF LIMITATIONS

The instant petition for writ of habeas corpus is subject to the statute of limitations of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The issue of whether Respondent's motion should be granted turns on the statute's limitation period, which provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or the laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S. C. § 2244(d)(1).  The federal limitations period is tolled while a "properly filed application for State post-conviction or other collateral review" is pending.  *See* 28 U.S.C. § 2244(d)(2).

4

## III. ANALYSIS

Petitioner's judgments of conviction became "final" on April 15, 2002[1], which is thirty days after Petitioner entered his guilty plea. Tenn. R. App. P. 4(a) (requiring notice of appeal to be filed within 30 days after entry of relevant judgment); *State v. Green*, 106 S.W.3d 646, 650 (Tenn. 2003) (finding judgment of conviction entered upon guilty plea becomes final 30 days after court accepts plea and imposes sentence). The statute of limitations began running the following day, April 16, 2002, and it ran for 77 days, until Petitioner filed his petition for post-conviction relief on July 2, 2002.[2] (Doc. 15-1, at 9.) The statute of limitations was tolled during the pendency of Petitioner's post-conviction proceedings, which finally concluded on October 31, 2005, when the Tennessee Supreme Court denied Petitioner's application to appeal the denial of post-conviction relief. (Doc. 15-10.) *See also* § 2244(d)(2). The statute began running again the following day, November 1, 2005, and it expired 288 days later on August 16, 2006.

Petitioner filed his federal habeas petition on December 28, 2021, some 5,613 days after the statute of limitations under § 2244(d) expired. (Doc. 1, at 17.) Accordingly, Petitioner's federal habeas petition was not timely filed, and the Court can consider its merits only if Petitioner establishes an entitlement to equitable tolling of the limitations period or demonstrates a "credible

---

[1] The thirty-day period expired on April 13, 2002, but since that date fell on a Saturday, the Petitioner would have had until Monday, April 15, 2002, to file an appeal. *See* Fed. R. Civ. P. 6(a); Tenn. R. App. P. 6(a); and Tenn. R. App. P. 21(a).

[2] Petitioner alleges that he intended to mail the petition on July 2, 2002. (Doc. 15-1, at 7), but the petition was stamped "filed" by the post-conviction trial court on July 8, 2002. (*Id*. at 3.) A prisoner's pleading is deemed filed on the day it was delivered to a prison official for mailing. *See Houston v. Lack*, 487 U.S. 266 (1977) (declaring "mailbox rule"). Petitioner does not identify when he delivered the post-conviction petition for mailing, but giving him the benefit of any uncertainty, the Court assumes for present purposes he delivered it on the earliest date indicated, which is July 2, 2002.

5

showing of actual innocence." *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (finding it is the petitioner's burden to demonstrate equitable tolling applies); *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (holding "credible showing of actual innocence" may overcome AEDPA's limitations period).

Petitioner claims that two statements from his codefendants demonstrate his actual innocence sufficient to allow a review of the merits of his petition. (Doc. 1, at 41–43.) Petitioner has produced an affidavit in which Rollins now claims that he forced Petitioner to participate in the robbery (*Id*. at 41–42), and a statement from Salyers in which she now claims that Petitioner did not know Rollins intended to kill the victim (*id*. at 43).

### 1. Legal Standard for Actual Innocence

Actual innocence, if proved, serves as a gateway through which a petitioner may obtain review of his otherwise barred or untimely claims of constitutional violation. *See McQuiggin*, 569 U.S. at 386; *see also Schlup v. Delo*, 513 U.S. 298 (1995); *House v. Bell*, 547 U.S. 518 (2006). In this context, "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citation and internal quotation marks omitted). Invocation of this exception requires the claim of innocence to be credible. *Cleveland v. Bradshaw*, 693 F.3d 626, 631 (6th Cir. 2012) (citing *Souter v. Jones*, 395 F.3d 577, 601 (6th Cir. 2005)). To be credible, a claim of actual innocence must be supported "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

To establish his entitlement to the actual innocence exception, a petitioner bears the burden of demonstrating that it is more likely than not that no reasonable juror would have convicted him in light of new evidence. *McQuiggin*, 569 U.S. at 386; *Schlup*, 513 U.S. at 327. The court is not

6

to make an independent determination as to the likelihood of a petitioner's guilt, but rather, to "to make a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329. The Supreme Court has counseled "that the actual innocence exception should remain rare and only be applied in the extraordinary case." *Souter*, 395 F.3d at 590 (citation and internal quotation marks omitted). This standard is only met in cases where "a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *McQuiggin*, 569 U.S. at 401 (citation and internal quotation marks omitted).

Any delay or lack of diligence in Petitioner's pursuit of his claim of actual innocence is not an absolute bar to an actual innocence claim, but timing is a relevant factor in evaluating the reliability of the proof of innocence. *McQuiggin*, 569 U.S. at 399; *Schlup*, 513 U.S. at 332 (holding court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of ... evidence [of actual innocence]"). When evaluating whether a petitioner has met this burden, the court assesses all reliable evidence of guilt or innocence, even evidence previously excluded or inadmissible under the rules of evidence at trial. *Schlup*, 513 U.S. at 327–28. That is, the court looks not just to the facts the petitioner admitted during the guilty plea, but also to "any evidence of his guilt that the Government has." *Id.*; *see also Connolly v. Howes*, 304 F. App'x 412, 418 (6th Cir. 2008) (holding reviewing court must consider "any admissible evidence of a petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy").

### 2. Application

As an initial matter, the Court notes that the factual basis of Petitioner's plea as presented was largely based on Petitioner's own statements admitting his involvement in the crime, not those

of Rollins or Salyers. (*See, e.g.*, Doc. 15-3, at 38–39; Doc. 15-12, at 121–34.) Therefore, even in light of Petitioner's newly presented evidence, a reasonable juror could still have found him guilty of the crimes for which he was convicted.

The Court otherwise finds that the timing of the statements undermines their credibility. The statements were authored more than a decade after Petitioner's guilty-plea hearing, and Petitioner presents no explanation for the delay in producing them. *See, e.g., Freeman v. Trombley*, 483 F. App'x 51, 61–64 (6th Cir. 2012) (finding recantation evidence presented ten years after witness testimony insufficient to support gateway actual-innocence claim where no explanation was offered for the significant delay); *Lewis v. Smith*, 100 F. App'x 351, 355 (6th Cir. 2004) (holding it was proper for district court to reject as suspicious a witness' recanting affidavit made two years after the petitioner's trial); *see also McQuiggin*, 569 U.S. at 399 (noting that the timing of newly discovered evidence of innocence is relevant to its reliability).

Moreover, Rollins has changed his story several times, and his affidavit is not consistent with his prior statements. In his initial statement to police on August 25, 2001, Rollins denied any involvement in the murder. (Doc. 15-11, at 83.) In a later statement on October 9, 2001, Rollins admitted that he killed the victim but stated that Petitioner was present and had the intent to rob the victim. (*Id*. at 87–90.) In an October 12, 2001, statement, Rollins stated that he killed the victim, but that Petitioner was involved in the robbery and told Rollins to kill the victim. (*Id*. at 92–96.) When testifying in his own defense at trial, Rollins denied that he killed the victim and implied that Petitioner committed the murder. (*Id*. at 127–28.) Rollins did not state that he forced Petitioner to join the robbery in any of these statements. Additionally, Rollins' affidavit is not consistent with any of Petitioner's prior statements, when it would have been beneficial for Petitioner to claim that he had been forced to cooperate with Rollins. (Doc. 15-12, at 88–134.)

8

Rollins' affidavit is further suspect because he is serving a life sentence[3] for the robbery and murder, and therefore, there is no detriment to him now admitting that he killed the victim or that he forced Petitioner to participate in the robbery. (Doc. 15-11, at 14.) *See Allen*, 366 F.3d at 405 (recognizing "postconviction statements by codefendants are inherently suspect because codefendants may try to assume full responsibility for the crime without any adverse consequences"); *In re Byrd*, 269 F.3d 561, 574 (6th Cir. 2001) (finding petitioner did not satisfy the miscarriage-of-justice exception necessary to reach the merits of a successive habeas petition where the evidence of actual innocence was an affidavit from a codefendant which was made six years after the codefendant had been convicted and was made only after he was no longer subject to further punishment for his actions for these crimes).

Turning to Salyers' statement, the Court finds it is inconsistent with Rollins' past statements and Petitioner's most recent statement. (*See* Doc. 1, at 43; Doc. 15-12, at 121–34.) Additionally, even if the Court credited Salyers' statement that Petitioner did not know the victim would be murdered, such a statement would not undermine a felony-murder conviction, which does not require that Petitioner know about or actively participate in killing the victim. (Doc. 1, at 43.) Rather, Petitioner need only to commit the robbery that serves as the underlying felony for the conviction. *See* Tenn. Code Ann. § 39-13-202(a)(2); *State v. Middlebrooks*, 840 S.W.2d 317, 336 (Tenn. 1992) (stating defendant "who is a willing and active participant in a robbery becomes accountable for all the consequences flowing from the robbery and may be convicted of first-degree murder where a co-perpetrator of the felony is the actual killer").

---

[3] Rollins initially went to trial and received the death penalty, but his death sentence was reversed on post-conviction review. *See State v. Rollins*, 188 S.W.3d 553 (Tenn. 2006); *Rollins v. State*, No. E2010-01150-CCA-R3-PD, 2012 WL 3776696, at *1 (Tenn. Crim. App. Aug. 31, 2012). Rollins subsequently entered a plea to a life sentence. (Doc. 15-11, at 14.)

Therefore, the Court finds Petitioner's evidence of innocence unreliable and contradicted by the evidence in the record before the Court. The inculpatory evidence against Petitioner precludes opening the actual-innocence gateway to this time-barred petition, and it will be dismissed.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, this Court must issue or deny a certificate of appealability ("COA") upon the entry of a final order adverse to the petitioner. Additionally, Petitioner must obtain a COA before appealing this Court's decision denying federal habeas relief. *See* 28 U.S.C. § 2253(c)(1). Because the instant petition is rejected on procedural grounds, Petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" in order for a COA to issue. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying this standard, the Court concludes that a COA should be denied.

## V.    CONCLUSION

For the reasons set forth herein, Respondent's motion (Doc. 20) will be **GRANTED**, and this federal habeas petition will be **DISMISSED** with prejudice. A certificate of appealability will be **DENIED**.

**AN APPROPRIATE ORDER WILL ENTER.**

**/s/ *Travis R. McDonough***
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**